UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ANTHONY SCOTT WILLIAMS,

          Plaintiff,

vs.                              Case No. 5:11-cv-636-Oc-99TBS

D.B. DREW; DENISE WISE; DALE GRAFTON; M. BARKER; JEFFREY CAMPBELL; CONWAY CASEY,

          Defendants.
_____

**OPINION AND ORDER**

This matter comes before the Court upon review of Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment (Doc. #30, Motion). Plaintiff filed a response in opposition (Doc. #34, Response). Also pending before the Court is Plaintiff's appeal of magistrate judge's ruling (Doc. #37), filed October 31, 2012. Plaintiff wishes to appeal the Magistrate Judge's October 5, 2012 Order (Doc. #36). These matters are ripe for review.

II. Amended Complaint

Plaintiff, who is currently confined at Williamsburg Federal Correctional Institution, alleges that while a prisoner at USP Coleman-II in Coleman, Florida, he was subject to various acts of retaliation after telling Defendant Wise that he would file a grievance concerning her loss of his property. See generally Doc. #14, Amended Complaint. Plaintiff sues the following Defendants

from USP-Coleman II in their official and individual capacities: Warden D.B. Drew, Lieutenant Conway Carey, Officer D. Wise, Unit Manager Dale Grafton, and Case Manager M. Barker.[1] Amended Complaint at 1.

### A. Officer Wise

According to the Amended Complaint, on July 24, 2009, while Plaintiff was on a medical transport to a local hospital, Defendant Wise packed Plaintiff's personal belongings, excluding several legal books. Id. at 9, ¶1. Plaintiff alleges that Wise placed the legal books on the officer's horseshoe, which is located in a common area of the institution, thereby allowing other inmates to steal his legal books. Id. Similarly, Plaintiff alleges that Defendant Wise placed his remaining personal property in the day room, thereby allowing other inmates to steal his property. Id. at 9, ¶2. Upon Plaintiff's return to the institution, Plaintiff claims he told Defendant Wise that he would commence grievance procedures against her for the loss of his property. Id.

Immediately thereafter Plaintiff alleges that Defendant Wise "began a campaign of harassment and retaliation." Id. at 9, ¶6. Plaintiff alleges that Wise issued a "frivolous" incident report, which the disciplinary committee expunged on August 7, 2009.

---

[1] Plaintiff also named as a Defendant Jeffrey Campbell, who Plaintiff identified as an attorney for the Bureau of Prisons. The Court sua sponte dismissed Defendant Campbell by separate order pursuant to § 1915.

Id. at 9, ¶7. Plaintiff alleges that Wise "forced" Plaintiff into the sunlight, despite a medical pass saying that he was not to be exposed to sunlight, under the pretext that he was suppose to report to the Lieutenant's office. Id. at 9-10, ¶8. Plaintiff alleges that Wise would "shake down" his cell. Id. at 10, ¶9. Plaintiff alleges that on August 10, 2009, Wise unlocked his celldoor after the 10:00 p.m. head count had been conducted. Id. at 10, ¶10. Plaintiff alleges that Wise issued another false incident report for "threatening her" on September 2, 2009. Id. at 10, ¶11. Plaintiff alleges that an unidentified Lieutenant "tore up" the incident report because the Lieutenant "knew" Plaintiff. Id. at 10, ¶12. When Wise learned that Plaintiff was not in the special housing unit, Plaintiff alleges Wise wrote him another frivolous incident report. Id. at 10, ¶13. Again, Plaintiff claims an unidentified Lieutenant "tore up" the second incident report. Id. On September 3, 2009, Plaintiff alleges that Wise called Plaintiff "a snitch" in front of the other inmates. Id. at 11, ¶15.

B. Lieutenant Carey

On an unspecified date Plaintiff alleges he filed a federal tort claim (TRT-SER-2009-05967) regarding the loss of his property. Id. at 11, ¶18; see also Pl's Exh. Y (letter acknowledging receipt of tort claim, but noting that it was invalid because it failed to provide the date of the incident, failed to indicate a sum certain,

failed to include a signature, and further was improper because loss or damage to property is not properly considered under the FTCA). Plaintiff alleges that his tort claim was directed to Defendant Carey for investigation. Id. at 11, ¶18-19.

On April 4, 2010, Plaintiff alleges that Carey told him he was going to "refute the basis of his tort claim no matter what the evidence show [sic]" because he believed Plaintiff was lying. Id. at 11-12, ¶20. Plaintiff further claims that Defendant Carey "threatened" him and told him he would be transferred to a "more violent prison" if he persisted. Id. at 12, ¶21. Plaintiff claims that Carey never called any of Plaintiff's witnesses regarding the tort claim. Id. at 12, ¶22.

On or about April 11, 2010, Plaintiff alleges that Carey "ra[n]sacked" Plaintiff's cell, took his legal books and a brown folder containing his witness statements, grievances, and other evidence pertaining to his tort claim. Id. at 12, ¶23. Plaintiff further alleges that Carey would "constantly" pull him from the recreation yard and hallways, and searched his cell three or four times a week. Id. at 12, ¶24

**C. Unit Manager Grafton and Case Manager Barker**

On April 29, 2010, Plaintiff alleges that Defendant Grafton informed Plaintiff that his tort claim was going to be denied. Plaintiff claims at this time, unbeknownst to him, Defendants Grafton and Barker began the "transfer proceedings/paperwork."

Amended Complaint at 13, ¶28. Plaintiff alleges that Defendant Barker told Plaintiff that if he did not stop pursuing his grievances and tort claim that he would be transferred elsewhere, but if Plaintiff dismissed the grievances or tort claim, then he would submit an appropriate request to permit Plaintiff to remain at Coleman II. Id., ¶30. Plaintiff claims that his transfer paperwork was signed by Defendants Grafton and Barker on June 4, 2010. Id., ¶31. Plaintiff claims, however, on July 9, 2010, Grafton and Barker denied responsibility for Plaintiff's transfer. Id.

### D. Warden Drew

On September 9, 2009, Plaintiff alleges he filed a "BP-9 administrative remedy" to Defendant Drew, but he refused to respond to the grievance. Id. at 14, ¶34. Thus, Plaintiff alleges that Drew "ratified the conduct" of Wise, Carey, Grafton, Barker, and Campbell. Id. at ¶34. Plaintiff alleges that Defendants Drew, Grafton, and Barker "conspired" to transfer him.

As relief, Plaintiff seeks compensation for loss of his legal books, loss of pay in the amount of $70.00 per month, nominal and punitive damages totaling 100,000 dollars. Id. at 15.

### III. Defendants' Motion

Defendants Drew, Wise, Grafton, Barker, and Carey move to dismiss certain retaliation claims based on Plaintiff's failure to exhaust his administrative remedies, see Motion at 4-6, and

otherwise move for summary judgment, raising qualified immunity. Id. at 6-17. Defendants also argue that under the Prison Litigation Reform Act, the Court must dismiss any claim for monetary damages because Plaintiff has not alleged any physical injury. Id. at 17. Defendants argue that, to the extent Plaintiff sues Defendants in their official capacity, the United States is immune from suit. Id. at 20. Finally, Defendants argue that to the extent the Amended Complaint raises any claims under the Federal Tort Claims Act ("FTCA"), such claims are barred by the statute of limitations. Id. at 21-23.

For the reasons that follow, the Court will grant Defendants' motion to dismiss in part, and deny, without prejudice, Defendants' motion for summary judgment to the extent that Plaintiff has not had an opportunity to engage in discovery.

### IV. Analysis

#### A. Premature Motion for Summary Judgment

The Court finds Defendants' summary judgment motion is due to be denied, without prejudice, as premature. As Rule 56 of the Federal Rules of Civil Procedure implies, district courts should not grant summary judgment until the non-movant "has had an adequate opportunity for discovery." Snook v. Trust Co. of Ga. Bank, 859 F.2d 865, 870 (11th Cir. 1988); see also McCallum v. City of Athens, 976 F.2d 649, 650 (11th Cir. 1992)(noting that a party may move for summary judgment only after exchanging "appropriate"

discovery). Thus, out of fairness to the non-movant, "summary judgment may be decided upon an adequate record." WSB-TV v. Lee, 842 F.2d 1266, 1269 (11th Cir. 1988). The Court recognizes that it "may grant summary judgment in the early stages of discovery only if 'further discovery would be pointless; and the movant is 'clearly entitled to summary judgment.'" Curry v. High Springs Family Practice Clinic and Diagnosis Ctr. Inc., Case No. 1:08-cv-8, 2008 WL 5157683 (N.D. Fla. Dec. 9, 2008).

A review of the docket reveals that Defendants' first responsive pleading to Plaintiff's Amended Complaint was the instant motion to dismiss, or in the alternative motion for summary judgment. See docket. Thus, a case management and scheduling order setting forth any deadlines for discovery and pre-trial motions was not yet issued. Id. Plaintiff submits that he has not had any opportunity to conduct discovery. See Doc. #37. Plaintiff's First Amendment retaliation claims are fact intensive. Plaintiff must be given an opportunity for discovery to develop the record. Consequently, the Court will deny Defendants' motion for summary judgment, without prejudice, as premature, because no discovery has been exchanged between the parties.

B.  **Failure To Exhaust Administrative Remedies**

The Prison Litigation Reform Act, which amended The Civil Rights of Institutionalized Persons Act, provides as follows:

> (a) Applicability of administrative remedies.
> No action shall be brought with respect to

>prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted.*

42 U.S.C. § 1997(a) (emphasis added); see also Alexander v. Hawk, 159 F.3d 1321, 1325-28 (11th Cir. 1998)(holding that prisoner asserting Bivens claim must exhaust available administrative remedies). A prisoner must exhaust all available administrative remedies before filing an action in federal court. Woodford v. Ngo, 548 U.S. 81, 88 (2006); Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). Although prisoners are not required to plead exhaustion, Jones v. Bock, 549 U.S. 199, 216 (2007), "[t]here is no question that exhaustion is mandatory under the PLRA, and that unexhausted claims cannot be brought in court." Id. at 211; see also Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011). In order to exhaust, the inmate must comply with "all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90.

Whether an inmate has exhausted his available administrative remedies is a factual issue that is properly made by the court. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Thus, "[e]ven though a failure-to-exhaust defense is non-jurisdictional, it is like a defense for lack of jurisdiction in one important sense: Exhaustion of administrative remedies is a matter in abatement, and ordinarily does not deal with the merits." Id.

(footnote, internal quotations, and citations omitted). The defense of exhaustion is properly raised in a motion to dismiss as a "matter of judicial administration." Id. at 1375. Thus, the court is permitted to look beyond the pleadings to decide disputed issues of fact in connection with the exhaustion defense. Id. at 1377, n.16.

Defendants assert that Plaintiff failed to properly exhaust his administrative remedies because he did not raise all of the claims *sub judice* to the highest available level of review. Motion at 5. The Bureau of Prisons has an established administrative process. 28 C.F.R. § 542.10-§ 542.19. First, a prisoner may seek resolution of the issues informally. 28 C.F.R. § 542.13(a). If unsuccessful, a prisoner shall then file a BP-9 formal written complaint with the institution within twenty calendar days following the date on which the incident occurred. 28 C.F.R. § 542.14(a). Next, a prisoner must appeal the institution's decision by filing a BP-10 grievance with the Regional Director. 28 C.F.R. § 542.15(a). Finally, a prisoner must appeal the Regional Director's response by filing a BP-11 grievance with the central officer's General Counsel for the BOP. 28 C.F.R. § 542.15(a).

Defendants argue that Plaintiff only properly presented one administrative remedy through the full grievance process (grievance no. 606039). Motion at 6, Exh. 2. In that grievance, Defendants note that Plaintiff did not mention the following allegations and

as such has not properly exhausted the following claims: that Defendant Wise forced Plaintiff to walk in the sunlight to the Lieutenant's office; that Defendant Wise unlocked Plaintiff's cell door after the 10:00 p.m. count; that Defendant Wise called Plaintiff a snitch in front of other inmates; and, that Defendant Drew failed to respond to a grievance Plaintiff filed on September 9, 2009. Motion at 6; see also Exh. 11.

In Response, Plaintiff argues that all supporting papers attached to the grievance must be considered. Response at 3. Plaintiff further argues that he put the BOP on notice of retaliation and the acts of retaliation were "not limited to only those listed." Id.

The Court finds that Plaintiff failed to exhaust his administrative remedies with respect to the aforementioned claims because he did not mention these incidents in the only grievance he pursued through all requisite levels of the administrative process. Martinez v. Minnis, 257 F. App'x 261, 265 (11th Cir. 2007)(unpublished)(affirming denial based on failure to exhaust administrative remedies on certain claims when grievance did not specify certain acts of alleged retaliation). Notably, Plaintiff did raise his concern that Wise improperly opened his cell door at 10 P.M. in another grievance, but the grievance was rejected as improper because it did not concern matters of a sensitive nature. Pl's Exh. H, I. Additionally, Plaintiff alleged Defendant Wise

"verbally abused" him, but did not include these allegations in his grievance on appeal. Consequently, Defendants' motion to dismiss with respect to their argument that Plaintiff failed to exhaust his administrative remedies is granted to the extent that Plaintiff's retaliation claims with respect to the sunlight, cell door opening, being called a snitch, and, Defendant Drew's failure to respond to a grievance, are dismissed under § 1997e(a). Consequently, only Plaintiff's claims of retaliation predicated upon the issuance of false disciplinary reports, pat down and cell searches, and transfer to another institution remain.

C. Qualified Immunity

Defendants assert that they are entitled to qualified immunity. Motion at 6-17.

Qualified immunity shields government officials who perform discretionary governmental functions from civil liability so long as their conduct does not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known.'" Rehberg v. Paulk, 611 F.3d 828, 838 (11th Cir. 2010)(citations omitted). "To evaluate claims of qualified immunity, the Court considers whether (1) the plaintiff has alleged a violation of a constitutional right; and (2) whether the right was 'clearly established' at the time of the defendant's misconduct. Id. at 838-89. These questions are answered in

whatever order is most appropriate for the case. Pearsons v. Callahan, 555 U.S. 223, 236 (2009).

Here, Plaintiff alleges violations of his First Amendment rights based on Defendants' alleged acts of retaliation after Plaintiff filed an inmate grievance and/or tort claim concerning the loss of his property by Defendant Wise. The law is well established that prison officials may not retaliate against inmates for filing lawsuits or administrative grievances. Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1968)(per curiam). While an inmate does not have a constitutionally protected liberty interest against being transferred to a less agreeable prison, Moody v. Daggett, 429 U.S. 78, 99 (1976), prison officials may not transfer an inmate in retaliation for exercising his right to file grievances against prison officials. Bridges v. Russell, 757 F.2d 1155, 1157 (11th Cir. 1985). Such retaliatory transfers violate an inmate's First Amendment rights. Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989). To prevail on a retaliation claim, the inmate must establish that: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. O'Bryant v. Finch, 637 F.2d 1207, 1212 (11th Cir. 2011)(internal quotations omitted); Moton v. Cowart, 631 F.3d

1337, 1341-42 (11th Cir. 2011). "To establish causation, the plaintiff must show that the defendant was 'subjectively motivated to discipline' the plaintiff for exercising his First Amendment rights." Moton, 631 F.3d at 1341 (quoting Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008)).

Here, assuming the allegations are true as required at this stage of the proceedings, Plaintiff has sufficiently alleged a violation of his First Amendment rights based on Defendants Carey, Wise, Grafton and Barkers' alleged retaliatory conduct, and Defendant Drew's failure to stop the conduct. Supra at 2-5. At the very least, the Court would have to rely on facts far beyond those alleged in the Amended Complaint before Defendants' arguments could be considered. At this stage of the proceedings, the Court cannot consider such matters. Accordingly, Defendants' motion raising qualified immunity is denied.

### D. Monetary Damages Precluded Absent Physical Injury

Defendants argue that any claim for compensatory or punitive damages must be dismissed because Plaintiff has not alleged any physical injury. Motion at 17. The Court agrees.

"No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); Douglas v. Yates, 535 F.3d 1316, 1321. Here, Plaintiff alleges no physical injuries.

Thus, the monetary damages Plaintiff seeks as relief are not available based on the allegations in the Amended Complaint.

**E. Official Capacity Claims are Barred**

Defendants note that Plaintiff is essentially naming the United States as a Defendant to the extent he files the action against the Defendants in their official capacity. Motion at 20. A plaintiff may bring a Bivens action against a federal officer in his individual capacity, but may not bring a Bivens action against a federal agency, or federal officer in his official capacity. See Solliday v. Fed. Officers, 413 F. App'x 206, 209-210 (11th Cir. 2011)(citations omitted). Consequently, this action is dismissed as to all of the Defendants in their official capacity.

**F. FTCA Claims are Time-Barred**

Defendants argue that any FTCA claim Plaintiff brings against the United States is time-barred. Motion at 21. Defendants note that on November 18, 2010, Plaintiff filed an administrative claim, assigned tracking number TRT-SER-2011-00811, alleging that BOP staff violated his constitutional rights by retaliating, abusing, harassing, and transferring him to another institution. Id. at 22. Through a letter dated April 6, 2011, the Bureau denied Plaintiff's administrative claim. Id. The denial letter warned Plaintiff that if he wished to file suit, he must do so within six months after the date of mailing of the notification. Id.

The FTCA is a limited waiver of the sovereign immunity of the United States government. United States v. Kubrick, 444 U.S. 111, 117-18 (1979). Specifically, the FTCA gives district courts jurisdiction over civil actions on claims against the United States, for personal injury caused by the negligent or wrongful act or omission to act of any government employee, while acting within the scope of employment, if a private person would be liable to the claimant. 28 U.S.C. § 1346(b) & § 2671; see also Trupei v. United States, 304 F. App'x 776, 782 (11th Cir. 2008)(stating "the FTCA authorizes claims against only the United States."). Indeed, the FTCA requires that the claimant present his claim to the appropriate federal agency within two years after the claim accrues and a civil lawsuit must be commenced within six months after the receipt of a final agency decision. Phillips v. United States, 260 F.3d 1316, 1318 (11th Cir. 2001)(citations omitted). Plaintiff's suit filed November 21, 2011, was in excess of the six-month time limitation. Consequently, this Court lacks jurisdiction over any FTCA claim raised in the Amended Complaint because these claims are time-barred.

ACCORDINGLY, it is hereby

**ORDERED:**

1. Defendants' Motion to Dismiss (Doc. #30) is **GRANTED in part** to the extent set forth herein. Defendants' Motion for Summary Judgment (Doc. #30) is **DENIED**, without prejudice, as premature.

2. Plaintiff's Notice of Appeal is **DENIED** as moot since Plaintiff will have an opportunity to engage in discovery. The Court will issue a case management and scheduling order by separate order.

3. Defendants shall file their answer within twenty-one days from the date on this Order.

**DONE AND ORDERED** in Orlando, Florida, on this __14__ day of March, 2013.

                                                G. KENDALL SHARP
                                      SENIOR UNITED STATES DISTRICT JUDGE

SA: alj
Copies: All Parties of Record