UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ANTHONY SCOTT WILLIAMS,

        Plaintiff,

v.                                                  Case No:   5:11-cv-636-Oc-38PRL

D. B. DREW, DENISE WISE, DALE
GRAFTON, M. BARKER and
CONWAY CAREY,

        Defendants.

_____/

## OPINION AND ORDER[1]

    This matter comes before the Court upon review of defendants' renewed motion for summary judgment (Doc. #57) and attached exhibits (Doc. #57-1) consisting of: plaintiff's Inmate Data Sheet (Exh. 1), defendant Drew's response to plaintiff's first set of interrogatories (Exh. 2), Program Statement 5521.05, Searches of Housing Units, Inmates, and Inmate Work Areas (Exh. 3), defendant Wise's response to plaintiff's first set of interrogatories (Exh. 4), declaration of defendant Wise (Exh. 5), SENTRY printout, Inmate Discipline Data Chronology Disciplinary record (Exh. 6), Administrative Remedy and Response, 606039-R2 (Exh. 7), OIA Investigative Report (Exh. 8), defendant Wise's

---

[1] Disclaimer:   Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.   These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.   Likewise, the court has no agreements with any of these third parties or their Web sites.   The court accepts no responsibility for the availability or functionality of any hyperlink.   Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

affidavit (Exh. 9), defendant Conway's response to plaintiff's first set of interrogatories (Exh. 10), declaration of Carey (Exh. 11), Carey's affidavit (Exh. 12), declaration of Michael Barker (Exh. 13), defendant Grafton's response to plaintiff's first set of interrogatories (Exh. 14), Grafton's affidavit (Exh. 15), defendant Barker's response to plaintiff's first set of interrogatories (Exh. 16), request for transfer/application for management variable form (Exh. 17), and administrative remedy generalized retrieval (Exh. 18).

Plaintiff filed a response opposing (Doc. #59-#59-1, Response) defendants' motion and attached supporting exhibits (Doc. #59-2 through #59-4, Pl's Exh.) including, in pertinent part: plaintiff's declaration (Doc. #59-2), Plaintiff's statement of disputed factual issues (Doc. #59-3), declaration from inmate John Richardson (Doc. #59-2 at 3), statement from inmate Melvin Hall (Doc. #59-2 at 4), prison psychologist's notes from plaintiff's counseling session (Id. at 5), declaration from inmate Jeff Russo (Id. at 6), statement from inmate Ricky Rusu[2] (Id. at 7), statement from inmate Jerry Scott Minor (Id. at 8), declaration from inmate John M. Richardson (Id. at 9), declaration from inmate James Raymond Cherry (Id. at 10-11), declaration from inmate Anthony Rollins (Id. at 12-13), declaration from inmate Richard Glawson (Id. at 14), declaration from inmate Perry Johnson (Id. at 15-16), response dated March 29, 2012 to plaintiff's Freedom of Information Act request (Id. at 17), declaration of inmate Harvey R. Johnson (Id. at 18-21), complaint dated August 21, 2009, concerning plaintiff's lost law books due to defendant Wise placing them in the dayroom (Id. at 23), informal resolution form dated August 26,

---

[2]The Court could not decipher this inmate's name on his declaration based on his signature.

2009, concerning defendant Wise allegedly telling plaintiff he could not wear his knee brace (Id. at 24), plaintiff's letter dated August 15, 2009, complaining about officer Wise making him walk through the metal detector despite his metal leg brace when other correctional officers conduct a pat down search instead (Id. at 25), and the August 16, 2009 official response thereto explaining that all inmates are required to clear the metal detector and if not cleared then a pat down search is conducted (Id. at 26).

Also pending before the Court are Plaintiff's discovery motions. Plaintiff filed a motion to compel (Doc. #64) and motion for legal correspondence with inmates from USP-Coleman (Doc. #65) to which defendants filed a response (Doc. #68) and attached supporting exhibits (Doc. #68-1).   On October 30, 2014, Plaintiff filed another motion for correspondence with inmates (Doc. #70) in which he only requests permission to communicate with one inmate witness, Jerry Scott Minor.   Defendants did not respond to this motion.   See docket.   These matters are ripe for review.

Based upon a thorough review of the record, Defendants' motions for summary judgment are due to be granted.   Additionally, Plaintiff's discovery motions will be denied because the record evidences that despite plaintiff not following Bureau of Prison's protocols for contacting inmate witnesses, he has several statements and declarations from inmate witnesses, including Jerry Scott Minor.

## I.   Background

In November of 2011, Plaintiff Anthony Scott Williams initiated this action pro se, while confined at Williamsburg Federal Correctional Institution (hereinafter FCI-Williamsburg), by filing a Civil Rights Complaint concerning incidents that arose during his incarceration at USP-Coleman-II located in Coleman, Florida.   See Doc. #1.   Plaintiff

is proceeding on his Amended Complaint (Doc. #14) against the following defendants in their individual capacities: Warden Drew, Lieutenant Conway Carey, Officer D. Wise, Unit Manager Dale Grafton, and Case Manager M. Barker.[3]

In March of 2013, the Court granted in part and denied in part defendants' motion to dismiss, or in the alternative motion for summary judgment.  See Doc. #39.  In pertinent part, the Court's order: denied defendants' motion for summary judgment as premature considering it appeared no discovery had been exchanged; determined that plaintiff did not properly exhaust certain claims of retaliation; denied defendants' qualified immunity argument; dismissed plaintiff's claims for monetary damages absent physical injury; found any official capacity claims against defendants were barred under Bivens; and found to the extent the Amended Complaint alleged any Federal Tort Claims Act claims, they were time-barred.

Consequently, the only claims remaining now are an Eighth Amendment conditions of confinement claim concerning the searches of plaintiff's cell and the First Amendment retaliation claims stemming from the issuance of false disciplinary reports, pat down and cell searches, and transfer to a medium-security federal institution against defendants Carey, Wise, Grafton and Barker, and against defendant Drew, the Warden, for failing to stop the conduct.  Id. at 11, 13.  Additionally, the Amended Complaint alleges conspiracy claims against all defendants.

---

[3]Plaintiff also had named as a defendant Jeffrey Campbell, who Plaintiff identified as an attorney for the Bureau of Prisons.  The Court sua sponte dismissed Defendant Campbell by separate order pursuant to § 1915.

## II.   Applicable Law

### A.   Standard of Review

"Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011)(internal quotations and citations omitted).   See also, Fed. R. Civ. P. 56(c)(2).   "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial." Moton, 631 F.3d at 1341 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).   The standard for creating a genuine dispute of fact requires the court to "make all *reasonable* inferences in favor of the party opposing summary judgment," Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc)(emphasis added), not to make all *possible* inferences in the non-moving party's favor. avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." Beard v. Banks, 548 U.S. 521, 529 (2006)(citations omitted); Celotex, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).   If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party.   Beard, 548 U.S. at 529 (citations omitted); Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003).   "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence,

and upon which the non-movant relies, are 'implausible.'"   Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted).   Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact.   Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000).   "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."   Scott v. Harris, 550 U.S. 372, 380 (2007).

### B.   First Amendment

Prison officials may not retaliate against inmates for filing lawsuits or administrative grievances.   Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1968)(per curiam).   While an inmate does not have a constitutionally protected liberty interest against being transferred to a less agreeable prison, Moody v. Daggett, 429 U.S. 78, 99 (1976), prison officials may not transfer an inmate in retaliation for exercising his right to file grievances against prison officials.   Bridges v. Russell, 757 F.2d 1155, 1157 (11th Cir. 1985).   Such retaliatory transfers violate an inmate's First Amendment rights.   Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989).   To prevail on a retaliation claim, the inmate must establish that: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech.   O'Bryant v. Finch, 637 F.2d 1207, 1212 (11th Cir. 2011)(internal quotations omitted); Moton v. Cowart, 631 F.3d 1337, 1341-42 (11th Cir. 2011).   "To establish causation, the plaintiff must show that the

defendant was 'subjectively motivated to discipline' the plaintiff for exercising his First Amendment rights."   Moton, 631 F.3d at 1341 (quoting Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008)).   "The defendant can prevail on summary judgment if it can show it would have taken the same action in the absence of the protected activity."   Smith v. Fla. Dep't of Corr., 713 F.3d 1059, 1063 (11th Cir. 2013)(citing Mosley, 532 F.3d at 1278).

### C. Eighth Amendment

The "cruel and unusual punishment" standard, which originally proscribed barbarous methods of punishment, has evolved to reflect society's "standards of decency."   Rhodes v. Chapman, 452 U.S. 337, 345-46 (1981), Estelle v. Gamble, 429 U.S. 97, 102 (1976).   The court employs a two-part analysis in determining whether the conditions of a plaintiff's confinement violate the Eighth Amendment. Hudson v. McMillan, 503 U.S. 1, 8 (1992).   First, the condition must be objectively and sufficiently serious or "extreme" to show that it "pose[s] an unreasonable risk of serious damage to [a plaintiff's] future health or safety."   Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004).   This element is contextual and is considered in the light of the evolving standards of decency that mark the progress of a maturing society.   Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010).   What is necessary to establish this element varies based on the type of Eighth Amendment claim at issue.   Here, considering Plaintiff attempts to allege a conditions of confinement claim, "extreme deprivations" are required.   Thomas, 614 F.3d at 1304 (citing Chandler, 379 F.3d at 1286).   Second, plaintiff must come forward with some factual allegations to show that the defendant official "acted with a sufficiently culpable state of mind."   Chandler, 379 F.3d at 1289 (citing Hudson , 503 U.S. at 8).

Negligence is not enough.  Id.  Rather, a plaintiff must show the defendant acted with "deliberate difference." Id.

### C.  Qualified Immunity

"Qualified immunity offers complete protection [from suit] for . . . public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Jackson v. Humphrey, ___ F.3d ___, 2015 WL 151116 * 6 (11th Cir. 2015)(citing Sherrod v. Johnson, 667 F.3d 1359, 1363 (11th Cir. 2012)).  "'In deciding about qualified immunity, we are considering what an objectively reasonable official must have known at the pertinent time and place . . .' that the decision was made." Id. at *6 (citing Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010)).  Further, "'[w]here the facts assumed for summary judgment purposes in a case involving qualified immunity show mixed motives (lawful and unlawful motivations) and preexisting law does not dictate that the merits of the case must be decided in plaintiff's favor, the defendant is entitled to immunity.'" Id. at *6 (citations omitted).

### III. Analysis

Defendants argue that they are entitled to judgment as a matter of law and initially raise qualified immunity as to all claims because plaintiff failed to sufficiently allege any constitutional violations against them.  Motion at 3-6.  Turning to plaintiff's First Amendment retaliation claims, defendants argue that plaintiff fails to satisfy the requisite elements because he has not demonstrated that the issuance of false incident reports, cell searches, pat downs, or transfer to a lesser-security institution would likely deter a similarly-situated person of ordinary firmness from engaging in such speech, and in fact

did not deter plaintiff considering he filed approximately twenty-three complaints thereafter.   Defendants also assert that plaintiff fails to establish a causal relationship between the retaliatory action and the protected speech and provides nothing but conclusory allegations.

With regard to plaintiff's Eighth Amendment claim related to the cell searches, defendants argue plaintiff has no reasonable expectation of privacy in his cell, nor does plaintiff present any evidence showing the cell searches were conducted in an inappropriate manner or for inappropriate purposes.   Id. at 9.   Plaintiff opposes defendants' motion and attaches his own declaration, grievance forms, and declarations from inmate witnesses.

## A.   The Amended Complaint

### 1.   Defendant Wise

According to the Amended Complaint, the acts of retaliation stemmed from an incident that occurred on July 24, 2009, while Plaintiff was on a medical transport to a local hospital, Defendant Wise packed Plaintiff's personal belongings, excluding several legal books.   Amended Complaint at 9, ¶1.   Plaintiff alleges that Wise placed the legal books on the officer's horseshoe, which is located in a common area of the institution, thereby allowing other inmates to steal his legal books.   Id.   Similarly, Plaintiff alleges that Defendant Wise placed his remaining personal property in the day room, thereby allowing other inmates to steal his property.   Upon Plaintiff's return to the institution, Plaintiff claims he told Defendant Wise that he would commence grievance procedures against her for the loss of his property.   Id. at 9, ¶2.   Immediately thereafter Plaintiff alleges that Defendant Wise "began a campaign of harassment and retaliation," including

writing "frivolous" incident reports on August 7, 2009, and September 2, 2009, some of which were torn-up by the Lieutenant, Id. at 9, ¶6-¶7, ¶11, ¶12, and frequent shake downs of his cell, Id. at ¶9.

Defendant Wise asserts in the motion for summary judgment that she only searched plaintiff's cell pursuant to BOP policy and did so without destroying personal property or leaving the area in disarray.   Motion at 9 (citing Exh. 3, Program Statement 5521.05, Searches of Housing Units, Inmates, and Inmate Work Areas at 9).   Defendant Wise further argues that plaintiff has not provided any evidence that the cell searches were done in response to this threat to file a grievance to satisfy a First Amendment claim or rose to the level of obduracy and wantonness in violation of the Eighth Amendment. Id.   Turning to the alleged false incident reports, Wise denies ever writing a false disciplinary report or doing so in retaliation.   Wise argues that Plaintiff has not produced affirmative evidence of retaliation.   Id. at 10.   Moreover, Wise argues that even if the one incident report was issued in retaliation, one incident report that was later expunged amounts to only a *de minimus* retaliatory act.   Id. at 10-11.

### 2.  Lieutenant Carey

On an unspecified date Plaintiff alleges he filed a federal tort claim (TRT-SER-2009-05967) regarding the loss of his property. Id. at 11, ¶18; see also Pl's Exh. Y (letter acknowledging receipt of tort claim, but noting that it was invalid because it failed to provide the date of the incident, failed to indicate a sum certain, failed to include a signature, and further was improper because loss or damage to property is not properly considered under the FTCA).   Plaintiff alleges that his tort claim was directed to Defendant Carey for investigation.   Id. at 11, ¶18-19.

On April 4, 2010, Plaintiff alleges that Carey told him he was going to "refute the basis of his tort claim no matter what the evidence show [sic]" because he believed Plaintiff was lying.  Id. at 11-12, ¶20.   Plaintiff further claims that Defendant Carey "threatened" him and told him he would be transferred to a "more violent prison" if he persisted.  Id. at 12, ¶21.   Plaintiff claims that Carey never called any of Plaintiff's witnesses regarding the tort claim.  Id. at 12, ¶22.

On or about April 11, 2010, Plaintiff alleges that Carey "ra[n]sacked" Plaintiff's cell, took his legal books and a brown folder containing his witness statements, grievances, and other evidence pertaining to his tort claim.  Id. at 12, ¶23.   Plaintiff further alleges that Carey would "constantly" pull him from the recreation yard and hallways, and searched his cell three or four times a week.  Id. at 12, ¶24.

### 3.   Unit Manager Grafton and Case Manager Barker

On April 29, 2010, Plaintiff alleges that Defendant Grafton informed Plaintiff that his tort claim was going to be denied.   Plaintiff claims at this time, unbeknownst to him, Defendants Grafton and Barker began the "transfer proceedings/paperwork."   Amended Complaint at 13, ¶28.   Plaintiff alleges that Defendant Barker told Plaintiff that if he did not stop pursuing his grievances and tort claim that he would be transferred elsewhere, but if Plaintiff dismissed the grievances or tort claim, then he would submit an appropriate request to permit Plaintiff to remain at Coleman II.  Id., ¶30.   Plaintiff claims that his transfer paperwork was signed by Defendants Grafton and Barker on June 4, 2010.  Id., ¶31.   Plaintiff claims, however, on July 9, 2010, Grafton and Barker denied responsibility for Plaintiff's transfer.  Id.

### 4.  Warden Drew

On September 9, 2009, Plaintiff alleges he filed a "BP-9 administrative remedy" to Defendant Drew, but he refused to respond to the grievance.  Id. at 14, ¶34.  Thus, Plaintiff alleges that Drew "ratified the conduct" of Wise, Carey, Grafton, Barker, and Campbell.  Id. at ¶34.  Plaintiff alleges that Defendants Drew, Grafton, and Barker "conspired" to transfer him.

### B.  First Amendment Claims

It is undisputed that Plaintiff filed a grievance dated August 21, 2009, against defendant Wise only concerning the alleged lost property, which was stamped as received by BOP officials on August 26, 2009.[4]  See Doc. #59-4 at 23; Doc. #59-4 at 2. Filing a grievance is protected activity under the First Amendment.  Wildberger, 869 F.2d at 1468.  This protected activity is the alleged impetus behind Wise's and the other defendants' purported acts of retaliation.  See generally Complaint; Pl's Exh., Doc. #59-4 at 2.  The record, however, fails to contain a genuine issue of material fact as to the remaining two elements as to all defendants: that plaintiff suffered adverse action such that official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and, that there is a causal relationship between the retaliatory action and the protected speech.

---

[4]Whether or not plaintiff's property was misplaced by Wise on July 24, 2009, while he was on medical transport, and as a result lost the property, is not a material fact in this case.  Nor is this matter at issue in this case.  Daniels v. Williams, 474 UY.S. 327 (1986); Hudson v. Palmer, 468 U.S. 517, 533 (1984).

## 1.   Cell Searches

Plaintiff alleges that defendants Wise and Carey conducted searches of his cell in retaliation.   Plaintiff's declaration states that Wise's cell searches started on August 1, 2009, and continued each day thereafter through August 4, 2009.   Plaintiff's Declaration, Doc. #59-2 at 2.   The inmate grievance at issue attached as plaintiff's exhibit reveals that he signed and dated the grievance concerning Wise losing his property on August 21, 2009, which is after the alleged retaliatory cell searches occurred on August 1, 2009 through August 4, 2009.   Moreover, Bureau of Prisons' officials did not stamp the grievance as received until August 26, 2009.   See Doc. #59-4 at 24-25.   Thus, the record lacks the causal connection considering the date plaintiff submitted the grievance and the date the alleged cell searches at issue were conducted.   Even if plaintiff claimed that the *threat* to file the complaint against Wise was protected activity under the First Amendment, the alleged retaliation that occurred after his threat did not deter him from subsequently filing the written complaint against Wise.   Thus, based upon this record, it cannot be said that plaintiff was deterred from exercising his First Amendment right.

Plaintiff also provides several other inmate statements and declarations, but only one declaration from inmate witness Richardson discusses Wise's searches of Plaintiff's cell.   Richardson's statement generally attests to the frequency of Wise's searches of Plaintiff's cell, but does not provide when these cell searches occurred, i.e. how close in proximity to the time Plaintiff filed the grievance concerning his lost property, see Stallworth v. Tyson, 578 F. App'x 948, 951 (11th Cir. 2014), and are otherwise completely conclusory as to why the cell searches occurred.   See Inmate Richardson Declaration, Doc. #59-4 at 3, 9 (regarding Wise's searches).   Thus, Inmate Richardson's declaration

is insufficient to create a genuine dispute of material fact.   All we are left with is plaintiff's conclusory allegations as to why Wise searched plaintiff's cell.

Regarding Defendant Carey's searches of Plaintiff's cell, it is undisputed that defendant Carey's role was to investigate the complaint plaintiff filed concerning Wise losing Plaintiff's property.   Plaintiff's Declaration, Doc. #59-2 at 3.   Defendant Carey was not named in the complaint plaintiff filed against Wise concerning the loss of his property. Pl's Exh., Doc. #59-4 at 23.   Nevertheless, Plaintiff claims that as a result of his complaint against Wise, Carey began retaliating against him for filing the complaint against Wise by searching his cell, conducting random pat-down searches, and threatening to transfer him to a "more violent" institution if he "did not drop it."   See generally Plaintiff's Declaration, Doc. #59-2 at 3-5.

The record concerning Carey's involvement also does not reveal a genuine dispute of material fact.   Initially, the causal connection between the alleged retaliatory actions and the impetus behind the retaliation is attenuated considering Carey was not even named in Plaintiff's loss of property complaint.

Plaintiff provides statements and declarations from other inmates that mention Lieutenant Carey searching plaintiff's cell.   Inmate Melvin Hall states that Carey searched plaintiff's cell "on numerous occasions" and "ransacked it."   See Doc. #59-4 at 4; see also inmate James Raymond Cherry's declaration (Doc. #95-4 at 10) (stating that Carey searched Plaintiff's cell); inmates Anthony Rollins' Statement (Doc. #59-4 at 12) (stating Carey would go straight to Plaintiff's cell and searched it numerous times); inmate Richard Glawson (Doc. #59-4 at 14) (stating Carey searched Plaintiff's cell and left the

cell a mess); inmate Perry Johnson's declaration (Doc. #59-4 at 15)(stating he saw Carey search Plaintiff's cell starting in March and April of 2010).

Carey acknowledges that he did search Plaintiff's cell on one occasion as part of his investigation regarding Plaintiff's missing property claim.   Motion at 13 (citing Exh. 11, Declaration of Carey).   During that search he located two of the legal books that were purportedly missing.   Id.   Otherwise, Carey attests he does not recall searching Plaintiff's cell, and if he did, the search was conducted pursuant to policy.   See Exh. 11, Declaration of Carey.   None of the inmate statements or declarations speak to why Carey searched Plaintiff's cell to create a genuine dispute of material fact with Carey's affidavit that he searched the cell once to investigate plaintiff's lost property complaint and otherwise pursuant to policy.   None of these inmate witnesses state they ever heard Carey tell Plaintiff that he searched the cell due to a complaint plaintiff against Wise losing his property.   And, inmate Perry Johnson's declaration states that Carey's searches of plaintiff's cell occurred in March or April of 2010, suggests no causal connection between the lost property complaint filed against Wise in August of 2009.   Consequently, the record contains no genuine dispute of material fact concerning the causal connection between Carey's cell searches and the complaint plaintiff filed against Wise losing his property.

### 2.   Pat-down searches

Plaintiff also states that Carey subjected him to pat-down searches in retaliation for filing the complaint against Wise in August of 2009.   A pat-down search, unless done in retaliation for an inmate exercising his or her freedom of speech, is otherwise constitutional for purposes of maintaining security and preserving internal order in the

institution.   See Florence v. Bd. of Chosen Freeholders, 132 S.Ct. 1510, 1517 (2012). Plaintiff submits a declaration of inmate Cherry that confirms he saw Carey conduct a pat-down search on plaintiff during which time Carey told Plaintiff that he "brought it on himself" and "when you stop, I'll stop."   Doc. #59-4 at 10.   No other inmate witness statement or declaration addresses the pat-down searches.   See generally Doc. #59-4. Carey submits that he routinely conducted pat-down searches on inmates leaving the dining hall and it is possible at some point Plaintiff was subjected to a random pat-down search.   Motion at 13 (citing Carey Declaration, Exh. 8); see also Exh. 12.

The record contains no genuine issue of material fact as to the causal connection between Carey's pat-down search of Plaintiff and a retaliatory motive.   Although Plaintiff submits a declaration of inmate Cherry that confirms he saw Carey conduct a pat-down search on Plaintiff, the declaration does not tie Carey's single pat-down search of plaintiff at an unidentified time to any retaliatory motive caused by Plaintiff's complaint filed against Wise.   And, as previously mentioned, Carey was not identified in the complaint against Wise's loss of plaintiff's property that was allegedly the impetus behind all of the alleged retaliatory acts.

### 3.  Incident Reports

Plaintiff's declaration attests that he received false incident reports from Wise on August 4, 2009, and on September 3, 2009, both of which were expunged.   Plaintiff's Declaration, Doc. #59-2 at 2-3.   Plaintiff does not otherwise submit proof of these incident reports.   Defendants, however, submit evidence that Wise issued only one incident report against plaintiff during the relevant time on August 4, 2009.   Motion at 11 (citing Exh. 6).   The August 4, 2009 disciplinary report was expunged.   Id.   Again, the date on

this incident report pre-dates Plaintiff's written complaint about Wise losing his property, which he claims was the impetus behind the acts of retaliation.   Thus, the record does not contain a genuine issue of material fact as to the causal connection.

Moreover, assuming *arguendo* that Wise did issue one incident report in retaliation against Plaintiff threatening to file a grievance against her, other courts have determined that a single, later dismissed disciplinary charge against an inmate even if taken with retaliatory motive, fails to state a claim.   Bridges v. Gilbert, 557 F.3d 541, 555 (7th Cir. 2009); Starr v. Dube, 334 F. App'x 341, 342-43 (1st Cir. 2009)(per curiam).   Based on the facts in this case, this Court agrees with this precedent from the First and Seventh Circuits.   To hold defendant Wise responsible for a retaliation claim stemming from an incident report that was expunged trivializes the First Amendment because plaintiff sustained no injury.

### 4.   Transfer

Plaintiff also alleges that he was transferred in retaliation for filing his lost property complaint against Wise.   Plaintiff claims that defendants Wise, Carey, Grafton and Barker were involved in the decision to transfer him.   It is well established that prison officials may not transfer an inmate in retaliation for exercising his right to file grievances against prison officials.   Bridges, 757 F.2d at 1157.   Such retaliatory transfers violate an inmate's First Amendment rights.   Wildberger, 869 F.2d at 1468; see also Brazill v. Cowart, Case No. 2013 WL 2947898 *5 (M.D. Fla. June 14, 2013).

Here, however, the unrefuted record evidence reveals that Wise and Carey were not involved in any way in the decision to transfer plaintiff.   On June 4, 2010, more than a year after Plaintiff complained about Wise losing his property, forms regarding the

possible transfer of Plaintiff to a lesser-security institution were completed.  This form was signed by defendant Barker, as the case manager, and Grafton as the unit manager. Doc. #57-2 at 51.    The process is as follows: at the expiration of an inmate's Management Variable, the Unit Team makes a recommendation as to whether or not the Management Variable should be continued. Declaration Barker, Doc. #57-2 at 28.    The final decision about whether an inmate is transferred lies within the Designation and Sentence Computation Center in Grand Prairie, Texas.  Id.    Plaintiff submits no evidence showing that either defendants Wise or Carey were a part of the unit team that made the recommendation to transfer plaintiff.  Consequently, Wise and Carey are entitled to the entry of summary judgment because the record contains no causal connection between plaintiff's transfer and defendants Wise or Carey.

The evidence of record reveals that the transfer/application of management variable form is dated June 4, 2010, and as previously mentioned, is signed by defendants Grafton and Barker.  Other than plaintiff's declaration containing conclusory beliefs, Plaintiff presents no other evidence to show that defendants Grafton and Barker recommended transferring plaintiff in retaliation for his filing a grievance against other correctional officials.    To the contrary, the record reveals that the transfer recommendation form is dated more than a year after plaintiff filed his complaint against Wise for losing his property.  Doc. #57-2 at 51.  Moreover, defendants Grafton and Baker explain that Plaintiff had been held at a high-level facility (Coleman) for only two years and the unit team recommended a lower-security transfer because plaintiff was a medium-security inmate.  Defendants' explanation concerning plaintiff's security level belies plaintiff's unsupported claims that he was transferred in retaliation.  Thus,

defendants show that they would have taken the same action in the absence of the protected activity.   Accordingly, defendants Grafton and Barker are entitled to the entry of summary judgment in their favor.

### C.   Eighth Amendment

Liberally construed, the Complaint alleges an Eight Amendment conditions of confinement claim against defendants Wise and Carey stemming from the frequent cell searches.   The Court does not find the record in this case presents a genuine dispute of material fact concerning the Eighth Amendment claim.   The searches of Plaintiff's cell were not objectively and sufficiently serious or extreme.   Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004); Thomas, 614 F.3d at 1304 (citing Chandler, 379 F.3d at 1286).   Nor does the record present a genuine issue of material fact as to whether Defendants Wise and/or Carey's acted with a sufficiently culpable state of mind. Chandler, 379 F.3d at 1289 (citing Hudson, 503 U.S. at 8).   Accordingly, Defendants Wise and Carey are entitled to summary judgment on Plaintiff's Eighth Amendment claim.

### D.   Supervisory Liability

Plaintiff blames Warden Drew, as the supervisor, for not intervening and stopping the defendants from retaliating against him.   Plaintiff claims that Drew was made aware about the retaliation through an inmate grievance he submitted.

Supervisory liability can be imposed "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).   The Amended Complaint contains no factual allegations suggesting that defendant Drew was personally involved

in any alleged act of retaliation. Absent personal participation by a defendant, a plaintiff must allege an affirmative causal connection between the defendants' acts and the alleged constitutional deprivation.   Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995). The causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so [,]" or when a custom or policy of the supervisor results in deliberate indifference to constitutional rights.   Cottone, 326 F.3d at 1360 (quoting Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003)).   "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."   Brown, 906 F.2d at 671.   Alternatively, facts supporting an inference that the supervisor directed the subordinates to act unlawfully or knew that they would do so and failed to stop them establishes a causal connection.   Cottone, 326 F.3d at 1360 (quoting Gonzalez, 325 F.3d at 1234) (remaining citations omitted).   It is this later argument Plaintiff makes—defendant Drew knew the other defendants were violating his rights and he failed to stop them.   Considering the Court has found defendants Wise, Carey, Grafton, and Barker are entitled to summary judgment, no supervisory liability claim remains against Warden Drew for failing to stop the other defendants.

## E.  Conspiracy Claims

To the extent the Amended Complaint attempted to allege a conspiracy claim against all defendants, to prove a conspiracy claim, "a plaintiff must show an underlying actual denial of his constitutional rights" and "prove that the defendants reached an understanding to deny the plaintiff's rights."   Hadley v. Gutierrez, 526 F.3d 1324, 1332

- 20 -

(11th Cir. 2008)(citations omitted).    Because the current record fails to show an underlying denial of Plaintiff's constitutional rights, no conspiracy claims remain. Consequently, defendants are entitled to summary judgment as a matter of law.

### F.   Plaintiff's Discovery Motions

Pending on the docket are several discovery motions.   On March 26, 2014, the Honorable Phillip Lammens, United States Magistrate Judge, addressed Plaintiff's prior discovery motions.   See Doc. #63.   First, the court denied, without prejudice, Plaintiff's motion to correspond with inmate witnesses, noting that it appeared Plaintiff did not comply with the Bureau of Prisons' procedures for contacting other inmate witnesses. Id. at 5-6.   The Court apprised Plaintiff that he could refile his motion to contact inmate witnesses, if he could attach evidence showing that he attempted to comply with the prison's policies regarding his attempt to contact the four inmates he identified as witnesses.   Id. at 6.   With regard to Plaintiff's prior motion to compel, the Court noted that based on the timing of Plaintiff's propounded discovery requests and Defendants responses thereto, the deadline to file any motions concerning discovery had expired. Id.   Additionally, considering the Court was unable to decipher what discovery Plaintiff actually received from Defendants, the Court enlarged the discovery time period so that Plaintiff could file a motion to compel only pertaining to his May 2013 discovery requests. Id.   The order was very clear that the Court was not extending the time period for all discovery.   Id. at 6-7.

### 1.   Plaintiff's Motion to Compel

The Court notes that as a general rule, parties are permitted to obtain discovery regarding any matter, not privileged, that is relevant.   Fed. R. Civ. P. 26(b)(1)(emphasis

added).   "Relevant information need not be admissible at trial if the discovery appears

reasonably calculated to lead to the discovery of admissible evidence."   Id.     The

information sought need not be admissible at trial "if the discovery appears reasonably

calculated to lead to the discovery of admissible evidence."   Id.   This phrase is to be

construed broadly, Nat'l Serv. Indus., Inc. v. Vafla Corp., 694 F.2d 246, 250 (11th Cir.

1982), but discovery "shall be tailored to the issues involved in the particular case,"

Washington v. Brown & Williamson Tobacco Corp., 959 F.2d 1566, 1570 (11th Cir. 1992).

Turning to the instant motion to compel, Plaintiff requests:

> [A]ll documents, inmate grievances, lawsuits, complaints,
> reprimands regarding the treatment of inmates by the
> Defendant Lieutenant Conway Carey.

Doc. #64 at 2.   Plaintiff states that defendants in response to his request stated "there

are no other documents found to be responsive to this request."   Id.

In response to the instant motion, defendants note that they responded to Plaintiff

as follows:

> See attached SIS investigation and see attached emails from
> LT. Patterson and Lt. Kleckner, including attachments.

Doc. #68 at 2.   Thus, defendants assert that they answered Plaintiff's request because

they provided copies of all records related to Plaintiff and defendant Carey.   Id.

Defendants now note that it appears Plaintiff is requesting any and all documents,

grievances, lawsuits, complaints, and reprimands regarding the treatment of *any inmate*

by Defendant Carey.   Id. (emphasis in original).   Therefore, defendants object to the

request as overly broad, vague, and unduly burdensome.   Id.   Defendants explain that

there is no way to identify or search inmate grievances or complaints by the name of the

staff member the complaints are against.   Id.   Defendants, nonetheless, note that in

response to Plaintiff's interrogatory question asking Carey about any past reprimands, Carey answered:

> Throughout my entire career, I have never received any reprimands regarding inmate allegations and have no inmate allegations of misconduct sustained.

Doc. # 68 at 2.

The Court agrees with defendants that Plaintiff's request is overly broad and cumbersome.   Defendants sufficiently answered Plaintiff's request.   Accordingly, Plaintiff's first request is denied.

Next, Plaintiff asks for written depositions for: (1) Correctional Officer Anthony; (2) Correctional Officer Schram; (3) Correctional Officer Berkey; (4) Correctional Officer Larry; (5) Correctional Officer Lieutenant Bennet; (6) Correctional Officer Lieutenant Brown; and (7) Chief Psychologist Doctor Woolf.   Doc. #64 at 4.   Defendants oppose this request as untimely based on the deadlines set forth in the Court's Case Management and Scheduling Order, noting that Plaintiff did not initially seek written depositions and the Court did not extend the discovery deadline.   Doc. #68 at 3.

The Court finds Plaintiff's request for depositions is untimely based on the Court's deadlines set forth in the Case Management and Scheduling Order.   *Pro se* litigants are entitled to liberal construction of their pleadings, but are required to conform to procedural rules.   Loren v. Sasser, 309 F.3d 1296, 1304 (11th Cir. 2002); McNeil v. United States, 508 U.S. 106, 113 (1993); Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989)("once a *pro se* IFP litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure.").   Accordingly, Plaintiff's second request is denied.

2.  **Motions to contact inmate witnesses**

Plaintiff seeks to compel defendants to provide addresses for four inmate witnesses.   Doc. #64 at 4.   Plaintiff does not identify the inmate witnesses by name in the instant motion, but identifies the witnesses by name in a separate motion: (1) Roscoe Sargent; (2) Jerry Scott Minor; (3) Jeff Russo; and (4) Al Harris.   Doc. #65 at 2.   Plaintiff submits that prison officials have repeatedly told him that he cannot contact other inmates unless they are co-defendants.   Doc. #64 at 4.   Plaintiff further asserts that his counselor told him that he needed to show an order from the Court in order to receive other inmates' addresses.   Id. at 5.

In response, defendants direct the Court to Plaintiff's exhibits, arguing that the exhibits evidence that the first time Plaintiff attempted to contact these inmate witnesses using the appropriate prison procedures was on April 1, 2014, eight months after the close of discovery.   Doc. #68 at 3.   Nevertheless, defendants submit that Plaintiff's request has been submitted to the appropriate unit manager at each institution for review and approval, pending any security concerns.   Id. at 3.   Since the date of defendants' response, Plaintiff filed a subsequent motion requesting contact only with one inmate witness, Jerry Scott Minor.   See Doc. #70.   Plaintiff submits that Mr. Minor witnessed the retaliatory cell searches.   Doc. #65.   Plaintiff maintains that defendants interfered with his ability to contact his inmate witnesses, including Roscoe Sargent, who Plaintiff identified as the main witness and was his cellmate at the time of the incident, because he has since been released from the Bureau of Prisons.   Id. at 2; see also Doc. #3 at 3

As set forth above, the Court previously denied Plaintiff's request for correspondence with inmate witnesses, without prejudice, subject to Plaintiff re-filing the

motion and showing that he complied with BOP procedures.   Plaintiff filed the instant motion and attached as exhibits letters addressed to the unit manger requesting contact with these inmate witnesses.   Defendants noted that upon Plaintiff's filing of his motion, counsel forwarded the request to the unit manager.   Plaintiff then filed the second motion to correspond with only inmate Minor.   As set forth above, plaintiff clearly had the opportunity to contact inmate witnesses, including inmate Minor, who already provided a statement supporting plaintiff's case.   See Doc. #59-4 at 8.   To the extent inmate Minor's statement does not address the cell searches, plaintiff does not explain why Minor did not discuss the cell searches in his previous statement.   Accordingly, plaintiff's motion is denied.

ACCORDINGLY, it is hereby

**ORDERED:**

1.   Defendants' motion for summary judgment (Doc. #57) is **GRANTED**.

2.   Plaintiff's motions to compel (Doc. #64, #70) and construed motion for sanctions (Doc. #70) are **DENIED**.

3.   Plaintiff's motion to correspond with inmate witnesses (Docs. #65, #70) are **DENIED**.

4.   The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this 24th day of February, 2015.

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

SA: alr
Copies: All Parties of Record